Tracy Kent NOVAK *v.* STATE of Arkansas

CR 85-106 698 S.W.2d 499

Supreme Court of Arkansas
Opinion delivered November 4, 1985
[Rehearing denied December 9, 1985.*]

---

\* Purtle, J., not participating.

*Hixson, Cleveland & Rush*, by: *Coy J. Rush, Jr.*, for appellant.

*Steve Clark*, Att'y Gen., by: *Connie Griffin*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Tracy Kent Novak was convicted of the capital felony murder of Bobby Joe Whitson and sentenced to life without parole. Six points of error are argued on appeal. We affirm the judgment.

On the evening of April 11, 1984, Tracy Novak, Bobby Joe Whitson, Darren Landis and Jeff Underwood were drinking at a tavern near Paris, Arkansas. They left the tavern at midnight in Whitson's truck and went to Whitson's house where Jeff Underwood went upstairs and went to sleep. He testified that Darren Landis woke him about 2:00 a.m. and told him Tracy had shot Bobby Joe Whitson. Underwood went downstairs and saw Whitson's body lying on a bed with a shotgun wound in the neck. Novak, he said, told him he had shot "the son-of-a-bitch." Underwood watched Novak put Whitson's stereo and his two shotguns in Whitson's truck and Novak proposed the three of them sell the truck in Oklahoma and "take off for somewhere else." Underwood and Landis chose to be taken home and en

route they were stopped by a Paris policeman. Novak was charged with driving while intoxicated and, subsequently, with the capital murder of Bobby Joe Whitson. Whitson's billfold was found under the driver's seat of the truck when Novak was arrested. Novak told the police he had Whitson's permission to use the truck.

That afternoon, after being given the Miranda warnings, Tracy Novak signed a confession that he had killed Bobby Joe Whitson after Darren Landis told him there was a lot of stuff in the house they could steal. Novak said he got a shotgun from the closet, loaded it and shot Whitson.

## I

Novak claims as a matter of law he could not have had the requisite intent to commit capital felony murder due to intoxication. Because he registered .10 on the breathalizer Novak argues he was legally intoxicated and the trial court should have reduced the charge to manslaughter. We do not sustain the argument as there was ample testimony that Novak was rational and coherent. The fact that he was shown by breathalyzer test to register the minimum intoxication to support a charge of DWI does not establish as a matter of law that he lacked the ability to form an intent to commit murder. That was a jury question and the court was correct in so holding. *Bailey* v. *State*, 263 Ark. 470, 565 S.W.2d 603 (1978).

## II

Novak contends the evidence of robbery or burglary was insufficient to support a conviction for capital felony murder—there being no proof he entered or remained unlawfully in Whitson's home without permission, and no proof of the value of the property taken, a necessary element of theft. Since robbery is defined in Ark. Stat. Ann. § 41-2103 (Repl. 1977) as occurring when one uses or threatens to use force with the purpose of committing theft, Novak contends the value of the property must be shown. We find no merit in the argument, as the requirements of capital felony murder are met if the accused merely *attempts* to commit one of the felonies included in the statute (Ark. Stat. Ann. § 41-1501(1)(a) (Repl. 1977)). And robbery may occur irrespective of the value of the property obtained or, indeed,

whether any transfer of property takes place. See Commentary, § 41-2103. Here, there was direct evidence that Novak placed a stereo and two shotguns in Whitson's truck and circumstantial evidence that Whitson's billfold and truck were also the objects of the crime. Novak's confession further supports the conclusion that his reason for killing Whitson was to rob him of his belongings. We find the proof sufficient to sustain the conviction. *Williams* v. *State*, 281 Ark. 387, 663 S.W.2d 928 (1984).

## III

The next point involves the issue of death qualified juries. We have repeatedly rejected the view taken in *Grigsby* v. *Mabry*, 758 F.2d 226 (8th Cir. 1985). Further discussion is pointless. See *Rector* v. *State*, 280 Ark. 385, 659 S.W.2d 168 (1983) and *Hendrickson* v. *State*, 285 Ark. 462, 688 S.W.2d 295 (1985).

## IV

The fourth assignment of error is: The Jury Selection Process Was So Flawed That It Denied The Appellant Due Process And A Fair Trial.

## A

Appellant relies on three incidents during voir dire. One concerned a prospective juror, Ms. Linda Horne, who had served previously as a juror in civil and criminal cases. Defense counsel asked Ms. Horne if she had found it hard to be impartial when she had served as a juror (Record, p. 285) and the court sustained an objection from the state on the grounds that jury deliberations were privileged. Novak argues he was denied the opportunity to determine whether Ms. Horne was prejudiced. However, the record demonstrates that at a subsequent point in voir dire counsel was permitted to ask Ms. Horne the identical question (Record, p. 287) and evidently was satisfied with her response ("No, sir"), as he pursued the matter no further. We find no error here.

## B

Novak maintains the trial judge would not permit him to ask prospective jurors whether they would vote for acquittal if

any of the elements of a charge were not proved by the state. He submits the trial court abused its discretion by not allowing questions regarding beliefs about the evidence to be presented, citing *Hobbs v. State*, 273 Ark. 125, 617 S.W.2d 347 (1981). One question was: "If the court instructs you that the crime charged includes several elements, will you vote for acquittal unless you are satisfied that the proof establishes all the elements?" This question drew an objection because it bound the juror to vote for acquittal, which the court sustained. We have said that such questions are improper.

The other question (more in the form of a declaration) was: "And in this case, the burden is on the state to show that the defendant committed burglary and/or robbery and murder; the state must show all of that. And if they do not then the defendant would not be guilty of capital murder?" The prosecutor objected to the *form* of the question, which the trial judge sustained and counsel moved to another topic with a request that his objection be noted. We do not find an abuse of the trial court's broad discretion in either instance.

## C

The other incident occurred as the trial judge was questioning the panel in general about the case and whether anyone on the panel knew the facts or the principals. Appellant urges a mistrial should have been granted. We quote from the record:

BY THE COURT:
All right. The defendant in the case is Tracy Kent Novak. Will Mr. Novak please stand and face the jury?

(Defendant complied.)
BY THE COURT:
Thank you. Have a seat. Are any of you related by blood or marriage to Tracy Kent Novak?

(No response.)
BY THE COURT:
Are you acquainted with him?

(Hand raised.)
BY THE COURT:
Yes?

MR. KEARNEY:
I have arrested him several times in the past.

BY THE COURT:
Would the fact that you are acquainted with him, would that affect your decision in the case?

MR. KEARNEY:
It probably would.

BY THE COURT:
All right, I will excuse you.

BY THE COURT:
All right, is anyone else acquainted with him or any member of his family?

MR. RUSH:
Your Honor, if I may approach the bench. Tom.

(Counsel approached the bench and the following was said outside the hearing of the prospective jurors:)

MR. RUSH:
I would like to move for a mistrial based on the statements that the juror said that he had arrested the defendant.

MR. TATUM:
I know what the motion is, your Honor. I can imagine.

MR. RUSH:
I would like to move for a mistrial based on the statements of the juror, that he has arrested the defendant.

BY THE COURT:
Any response.

MR. TATUM:
Your Honor, I think that is why we have voir dire, to see if there is any prejudices.

BY THE COURT:
That is the way I understand it too. Your motion will be denied.

MR. RUSH:
Well, your Honor, of course the juror has already left the

courtroom. I would like to have asked him what he arrested the defendant for—that would indicate that he might have arrested him for a traffic ticket or whatever. But at any rate, I save my exceptions on the motion for a mistrial.

BY THE COURT:
All right.

(Proceedings returned to the hearing of the prospective jurors.)

 We have said in a myriad of cases that mistrial is a drastic remedy and rests with the discretion of the trial judge. It should be granted only when the prejudice is so manifest that the trial cannot in justice continue. *McFarland* v. *State*, 284 Ark. 533, 684 S.W.2d 233 (1985).

 We have upheld the trial court in similar circumstances where, by chance remark, it was brought out that the defendant had had prior arrests, even prior convictions, where the comment was inadvertent. In *McFarland* v. *State, supra*, we said the defendant had received a fair trial notwithstanding repeated references to other crimes. We noted the remark of one witness that he was still facing criminal charges in another county "like the others" (referring to the defendants), did not require a mistrial because the remark was not deliberate, nor were the other crimes identified. The same can certainly be said of the comment here, which referred merely to unidentified "arrests."

In *Sanders* v. *State*, 277 Ark. 159, 639 S.W.2d 733 (1982), we affirmed the trial court's denial of a mistrial motion in a rape trial where one police officer mentioned seeing what he believed to be controlled substances in the defendant's bedroom and another officer said he remained in the house "collecting evidence on the other charge."

In *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 285 (1982) a psychiatrist for the prosecution, testifying on the defendant's sanity, when asked what he relied on for his opinion, mentioned certain test results and added, "I also had access to his prison records." We refused to reverse the trial court's denial of a mistrial motion.

In *Hogan* v. *State*, 284 Ark. 250, 663 S.W.2d 756 (1984), we

upheld the trial court's refusal to order a mistrial where a police officer, asked by the prosecutor if these fingerprints were the first taken of the defendant, answered, "No, sir, that's all I took. We do have a prior arrest record on him, which we do have a fingerprint on." We found no abuse of the trial court's discretion.

In reviewing motions for a mistrial we have observed that where the evidence of guilt is overwhelming, marginal errors do not require reversal. *McFarland* v. *State, supra; Pace* v. *State*, 265 Ark. 712, 580 S.W.2d 689 (1979). From a thorough review of this record we are satisfied the appellant received a fair trial and the evidence against him permits not the slightest doubt of guilt. His own confession, which he does not attack, proves the motive and that the crimes were performed with deliberation.

Some indication of the minimal impact of the mention of arrests by the prospective juror lies in the fact that counsel delayed objecting to the remark until the court had asked additional questions, excused the prospective juror, and he had walked from the courtroom. Moreover, on appeal Novak argues in the alternative that, denied a mistrial, he was entitled to an admonition to the other panel members to disregard the remark. Doubtless so, but having failed to ask for one he cannot now complain on that score.

## V

Another argument is that the trial court should not have permitted Deputy Tim Markham to testify in rebuttal that he heard Tracy Novak tell his grandmother, "I killed the boy." Novak argues that Markham had testified at a pre-trial hearing that he did not take any statements from Novak and did not overhear Novak make any statement to police officers. Those issues go to weight and not to admissibility.

A further ground for the argument is that defendant's discovery motion requested any oral statements made by Novak to Markham or to any other police officer and the remark Deputy Markham claimed to have overheard was not given to the defense in discovery. However, as the state points out, that was not offered as a basis for the objection at the trial and, therefore, cannot be raised initially on appeal. *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980).

## VI

■ The final point for reversal deals with the admission of a photograph of the body of Bobby Joe Whitson which Novak insists is inflammatory. The prosecutor offered several color photographs and the trial judge limited the state to one. Whitson's body is in bed, covered by a blanket to the upper chest. There is an area of the neck just below the ear where No. 6 shotgun pellets have entered the body and caused considerable bleeding from the numerous entry points. The face is turned away but some bleeding from the nose is clearly visible. Even so, in a relative sense the scene is not particularly gory. We have said the admission of photographs falls within the sound discretion of the trial court and that discretion will not be disturbed on appeal unless abused. *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981). The trial court's discretion in admitting the photograph was not abused.

## VII

We have examined all other objections made during the trial pursuant to Rule 11(f), Rules of the Supreme Court, Ark. Stat. Ann. Vol. 3A (Repl. 1977) and find no error. See *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981).

Affirmed.

PURTLE, J., not participating.