Steven Douglas HILL *v.* STATE of Arkansas

CR 85-212                                    713 S.W.2d 233

Supreme Court of Arkansas
Opinion delivered July 7, 1986
[Rehearing denied September 15, 1986.]

390

*William R. Simpson, Jr.*, Public Defender, and *Thomas J. O'Hern*, Deputy Public Defender, by: *Deborah R. Sallings*, Deputy Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Connie Griffin*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant was charged

with nine felonies stemming from events that occurred on October 15, 1984, when the appellant and another inmate, Michael Cox, escaped from the Wrightsville Unit of the Arkansas Department of Correction. Separate trials were held for the two defendants. On the day of his trial appellant pleaded guilty to all charges except for the capital murder of Arkansas State Trooper Robert Klein and the attempted murder of Lt. Conrad Pattillo, a fellow officer. A jury trial was held on the remaining counts and a guilty verdict was returned. In a separate sentencing procedure, the jury sentenced appellant to death by lethal injection for the capital murder and to 50 years imprisonment for criminal attempt to commit capital murder. It is from that verdict and sentence that this appeal is brought. Our jurisdiction is pursuant to Sup. Ct. R. 29(1)(b). As required by our rule 11(f) we have reviewed all abstracted rulings adverse to appellant as well as the points raised on appeal. We find no error.

The appellant raises eight arguments for reversal which will be discussed separately.

## I.   *VOLUNTARINESS OF HIS CONFESSION*

Appellant's first allegation of error is that the trial court should not have admitted into evidence a statement given by him after his arrest as the appellant did not voluntarily or knowingly waive his constitutional rights. In support of this contention, appellant claims that he was threatened by police officers and that, during the videotaping of his confession, some of the officers were armed and one of the officers was "playing" with his gun in an effort to intimidate the appellant. The officers denied these accusations.

On appeal this court examines a trial court's ruling that a statement was voluntarily given to see if the state proved by a preponderance of the evidence that the statement was voluntary. We make an independent determination of this issue considering the totality of the circumstances and affirm the trial court unless we can say the lower court was clearly wrong. *Williamson* v. *State*, 277 Ark. 52, 639 S.W.2d 55 (1982); *Hunes* v. *State*, 274 Ark. 268, 623 S.W.2d 835 (1981). When the situation presents a swearing match between the officials and the appellant, as here, the conflict is for the trial court to resolve. *Smith* v. *State*, 286 Ark. 247, 691 S.W.2d 154 (1985).

The testimony at the *Denno* hearing revealed that appellant escaped from prison shortly before 3 p.m. on October 15. He and Cox arrived at a home in Woodson, Arkansas, occupied by Billie Jo, Merle and Buck Rice. The two inmates robbed the Rices at gunpoint, threatened and intimidated them, tied them up, and left the house at about 10:30 p.m. From there they went to a second house, owned by the Cooks where the fatal shooting occurred at about midnight. After a standoff with the police, Hill surrendered at approximately 4:30 a.m. and was advised of his Miranda rights by Lt. David Rosegrant. Around 5 a.m. Cox surrendered. The inmates were transported to state police headquarters in Little Rock and arrived at 5:45 a.m. Cox was interrogated first and then Hill. The appellant's videotaped confession was taken at 6:50 a.m. after he was advised of his Miranda rights by Investigator Bill Gage. The statement lasted about 30 minutes. The videotape was then transcribed and read back to Hill who signed it.

During the *Denno* hearing, Hill acknowledged that he was read his rights and understood them, but he did not choose to exercise those rights at that time. He stated that he knew what rights were available to him.

Based on the foregoing, the state met its burden of proving a voluntary waiver.

Appellant also contends that when the statement was taken the officers only advised him that he was a suspect in an escape and not in a capital murder. Accordingly, appellant maintains he could not intelligently waive his rights since he did not know the nature of the charges and the consequences of a waiver of rights. Contrary to the appellant's claim, the transcript reveals that he was advised he was a suspect in a capital murder on at least two different occasions. Sgt. Larry Gleghorn testified the appellant was advised he was a suspect in a murder and kidnapping and aggravated robbery before the videotaping began. Officer Rosegrant testified that when he advised appellant of his rights he also informed him of the charges. Appellant's argument is without merit and the confession was properly admitted.

## II.  PROSECUTORIAL MISCONDUCT

Appellant claims that the prosecutor's closing argument in the penalty phase of the trial was improper and prejudiced his right to a fair trial. He maintains the trial court erred in refusing to grant a mistrial or a new trial after the prosecutor argued outside the record and presented evidence not in the record.

During his closing argument, in the penalty phase of the trial, the prosecutor argued as an aggravating circumstance the that the capital murder was committed to avoid arrest. As evidence of that, he told the jury that the appellant was at the Cooks' house "loaded for bear." To illustrate his point, he picked up one of the recovered shotguns and loaded it, to show that it held only five shells, which was the number found in the gun when Hill was arrested. The inference to be drawn was that Hill, after firing two shots — one at Officer Klein and one at Officer Pattillo — reloaded the gun and was ready to shoot again.

The appellant states that, although the murder weapon, a 20-gauge shotgun, contained five shells when it was found, there was no proof that the gun held *only* five shells. In addition, when the prosecutor conducted the demonstration, he mistakenly used the wrong gun, a 16-gauge shotgun also found at the scene. Although the appellant's counsel lodged a general objection to the demonstration, there was no specific objection during the closing argument to the use of the wrong gun.

Demonstrations such as the one performed by the prosecutor are permissible. We have allowed prosecutors to use items such as clothing, rope or documents by way of illustration in their closing arguments for many years. *See Derrick* v. *State*, 92 Ark. 237, 122 S.W. 506 (1909); *Tiner* v. *State*, 109 Ark. 138, 158 S.W. 1087 (1913). Some leeway is given in closing remarks and counsel are free to argue every plausible inference which can be drawn from the testimony. *Abraham* v. *State*, 274 Ark. 506, 625 S.W.2d 518 (1981). Nevertheless, "[c]losing arguments must be confined to questions in issue, the evidence introduced and all reasonable inferences and deductions which can be drawn therefrom." *Williams* v. *State*, 259 Ark. 667, 535 S.W.2d 842 (1976). The trial court has a wide latitude of discretion in controlling the arguments of counsel and its rulings in that regard are not overturned in the absence of clear abuse. *McCroskey* v. *State*,

271 Ark. 207, 608 S.W.2d 7 (1980).

Other states have found permissible closing argument where a prosecutor used "similar" material to a rope used to bind a victim to show that the victim might have bound himself, *Collins v. State*, 561 P.2d 1373 (Okla. Cr. 1977); where a live model and an unloaded pistol were used to demonstrate that shots could not have been fired in the manner claimed by the defendant, *Herron v. Commonwealth*, 23 K.L.R. 782, 64 S.W. 432 (1901); where a piece of crayon was used to show how the defective muzzle on a revolver could have deformed a bullet fired from the pistol, *Russell v. State*, 66 Neb. 497, 92 N.W. 751 (1902); where an attorney borrowed a gun from an officer in the courtroom to demonstrate the deceased could not have inflicted a fatal wound upon herself, *Peoples' v. Commonwealth*, 147 Va. 692, 137 S.E. 603 (1927); and where a toy gun was used to prove the fatal wound could not have been inflicted as claimed, *Barber v. Commonwealth*, 206 Va. 241, 142 S.E.2d 484 (1965). In the *Barber* case the Virginia court found it was within the sound discretion of the trial court to determine whether the use of the toy pistol should be permitted even though the toy was not shown to be the same size or type as the murder weapon.

Likewise, here the trial judge did not abuse his discretion when he permitted the prosecutor's demonstration with the shotgun. As to the use of the wrong gun for the demonstration, without an objection at the trial, this could not have been a ground for a mistrial. Nor is it newly discovered evidence since it could have been discovered when it occurred during the trial and there is no indication that the evidence is "important" as required by Ark. Stat. Ann. § 43-2203(6) (Repl. 1977).

Even if this court were to consider the use of the wrong gun to be error, it would be rendered harmless by the jury's specific findings of aggravating circumstances. By the demonstration, the prosecutor was attempting to establish the proposition that the appellant knowingly created a great risk of death to a person other than the victim, premised on the fact that the appellant reloaded after shooting the police officer. The jury, however, given the opportunity, failed in its formal findings to recognize that aggravating circumstance existed. *See Ford v. State*, 276 Ark. 98, 633 S.W.2d 3 (1982). This argument is

accordingly without merit.

## III. *PREVIOUS FELONY AS AGGRAVATING CIRCUMSTANCE*

Prior to the beginning of the trial, appellant pled guilty to three counts of aggravated robbery and one count of kidnapping, and to burglary, theft and escape. These offenses stemmed from appellant's escape from jail and the incident at the Rice home in Woodson and occurred on the same day as the murder and attempted murder of which appellant was convicted. In the penalty phase of the trial, the state used these convictions pursuant to Ark. Stat. Ann. § 41-1303(3) (Repl. 1977) which provides as an aggravating circumstance:

> The person previously committed another felony an element of which was the use or threat of violence to another person or creating a substantial risk of death or serious physical injury to another person.

Appellant maintains that the statute does not contemplate the use of felonies that are part of the same criminal episode as the capital murder. We disagree.

In passing § 41-1303(3) the General Assembly intended to narrow the class of persons exposed to the death penalty to those with a predisposition for violent acts. The state, during the guilt and innocence phase, can always prove other acts done at the same time as the principal crime to show the aggravated nature of the crime charged. *McFarland* v. *State*, 284 Ark. 533, 684 S.W.2d 233. Furthermore, Ark. Stat. Ann. § 41-1303(8) (Supp. 1985) allows the state, during the penalty phase, to show the murder was done in a particularly heinous manner. The reason, then, for section (3) is to allow the state to show that the defendant has a character for violent crimes or a history of such crimes.

Section (3) was amended in 1977 to permit the state to prove that the defendant has previously *committed* violent felonies. Prior to the amendment, the state could only offer proof of previous *convictions* for violent felonies. The question we must answer is what the legislature meant by "previously committed."

Since there are other avenues by which the state can

prove crimes immediately connected with the principal crime, the only logical conclusion is that section (3) applies to crimes not connected in time or place to the killing for which the defendant has just been convicted. In this case the crimes used to prove an aggravated circumstance involved other victims, in another place and previously in time. Therefore, they were properly used as an aggravating circumstance.

## IV. *YOUTH AS MITIGATING EVIDENCE*

The appellant turned 18 about two months before the crimes were committed. This evidence was presented to the jury and was submitted on the form as a mitigating circumstance. The jury found that "[t]here was no evidence of any mitigating circumstance." Because the jury did not check the part of the form providing that "there was evidence of mitigating circumstances but the jury agreed they did not exist at the time of the murder," appellant argues the jury improperly failed to consider the evidence of appellant's youth.

In *Giles* v. *State*, 261 Ark. 413, 549 S.W.2d 479 (1977) this court found error in the sentencing procedure in the jury's failure to find any mitigating circumstances where there was evidence throughout the record that appellant was an imbecile who suffered from organic brain syndrome. In that same case, however, the jury found that the youth of the appellant, who was apparently 19 or 20 when the crime was committed, was not a mitigating factor. This court affirmed the jury's finding, stating, "[a]ny hard and fast rule as to age would tend to defeat the ends of justice, so the term youth must be considered as relative and this factor weighed in the light of varying conditions and circumstances." *Giles, supra; see also Neal* v. *State*, 261 Ark. 336, 548 S.W.2d 135 (1977).

We do not interpret the jury's action to mean that they did not consider the evidence of mitigation that was offered. Rather we find the jury determined that the appellant's youth was not a mitigating factor, as they were entitled to do, and so indicated that no mitigating circumstances were found. No error was committed.

## V. MANDATORY DEATH SENTENCE

The appellant filed a pretrial motion challenging the constitutionality of the death penalty sentencing statute as a mandatory death statute. The sentencing statute, Ark. Stat. Ann. § 41-1302 (Repl. 1977) states:

(1) The jury shall impose a sentence of death if it unanimously returns written findings that:

(a) aggravating circumstances exist beyond a reasonable doubt; and

(b) aggravating circumstances outweight [outweigh] beyond a reasonable doubt all mitigating circumstances found to exist; and

(c) aggravating circumstances justify a sentence of death beyond a reasonable doubt.

Appellant argues that the statute does not permit an individual determination to be made by the jury as to whether this particular defendant should be sentenced to death.

A jury cannot impose a sentence of death until it specifically finds that all three parts of the statute apply. We have held in several cases that, regardless of a jury's findings with respect to aggravation versus mitigation, "it is still free to return a verdict of life without parole, simply by finding that the aggravating circumstances do not justify a sentence of death." *Clines, Holmes, Richley & Orndorff* v. *State*, 280 Ark. 77, 656 S.W.2d 684 (1983). The jury has additional leeway because it can find that mitigating circumstances outweigh aggravating circumstances. We have found that this fact prevents the imposition of the death sentence from being mandatory. *Collins* v. *State*, 261 Ark. 195, 548 S.W.2d 106 (1977). We further stated in *Collins* that "[t]he statute provides adequate guidelines, so limiting and directing the exercise of the jury's discretion that an arbitrary, capricious, wanton or freakish exercise of that discretion is improbable."

A further safeguard is provided in that the trial judge is not required to impose the death penalty in every case in which the jury verdict prescribes it. *Ruiz & Denton* v. *State*, 275 Ark. 410, 630 S.W.2d 44 (1982); *Collins, supra.*

The sentencing statute does not require a mandatory death sentence, but rather establishes criteria which must be strictly met before a death sentence shall be imposed. It is not unconstitutional.

## VI.  CONSTITUTIONAL QUESTIONS

Under this argument, the appellant raises several challenges to the constitutionality of the death penalty and alleges that his constitutional rights were violated.

He first argues that error was committed because the jury was death qualified. This court has repeatedly held that this practice is constitutional, Rector v. State, 280 Ark. 385, 659 S.W.2d 168 (1983); Novak v. State, 287 Ark. 271, 698 S.W.2d 499 (1985), and the United States Supreme Court has now also taken that position. Lockhart, Dir., Ark. Dept. of Correction v. McCree, ___ U.S. ___, 106 S.Ct. 1758 (1986).

Appellant next claims the sentence of death is cruel and unusual punishment, but acknowledges that this argument has been rejected by the U.S. Supreme Court in Gregg v. Georgia, 428 U.S. 153 (1976) and by this court in Fairchild v. State, 284 Ark. 289, 681 S.W.2d 380 (1984). We decline his invitation to overrule our cases.

The next allegation of error by appellant is that the death penalty statute unconstitutionally infringes upon an accused's right to plead not guilty and to have a jury trial. This contention is based on the fact that the only way the death penalty can be imposed is if the defendant chooses a jury trial since a judge cannot sentence a defendant to death. Ark. Stat. Ann. § 41-1302(3) (Repl. 1977). We have rejected this argument several times. E.g., Ruiz & Denton v. State, 275 Ark. 410, 630 S.W.2d 44 (1982); Hill v. State, 278 Ark. 194, 644 S.W.2d 282 (1983).

## VII.  MOTION FOR NEW TRIAL

After the transcript was filed but before briefs were due, appellant submitted a petition for writ of error coram nobis which was denied by this court. The petition was based on an unsolicited affidavit from appellant's codefendant, Michael Cox, in which Cox purportedly states that he, not appellant, fired the shot that killed Officer Klein. Appellant asked this court in his petition to

order the trial court to conduct a hearing to determine whether a new trial is needed. We are now asked to reconsider our ruling denying the petition.

Although we are being asked to decide this petition on its merits, the petition is not a part of the transcript and neither is Cox's affidavit. It is the responsibility of the parties to provide this court with a record.

Based on what is contained in the briefs, however, we find appellant's argument is without merit. A writ of error coram nobis is an excessively rare remedy meant to provide relief where none is available on appeal because the facts are not in the record. *Penn* v. *State*, 282 Ark. 571, 670 S.W.2d 426 (1984). That is the situation here. If relief was to have been granted, it would have been when the writ was filed and not now on appeal. We have already denied the writ.

### VIII. *SUFFICIENCY OF THE EVIDENCE*

For his final contention, the appellant challenges the sufficiency of the evidence. In doing so he admits that there was sufficient proof that either he or Michael Cox killed Officer Klein. He maintains, however, that without his statement, the admissibility of which he has challenged, there is insufficient evidence to establish which of the two committed the murder. We have already discussed the appellant's confession and found that it was admissible. The appellant's confession is a part of the evidence which is sufficient to support the conviction.

Affirmed.

PURTLE, J., concurs.

JOHN I. PURTLE, Justice, concurring. The appellant was charged with nine felonies committed during a period of a few hours. At the beginning of his trial, he pled guilty to all of the felonies except the charges of capital murder and attempted capital murder, for which he was sentenced to death and 50 years, respectively. I disagree with the majority on two points. I believe the state erroneously argued evidence which was outside the record and introduced evidence of aggravating circumstances which should have been excluded.

First, the state's attorney used a shotgun for demonstration

purposes during the closing argument. He used the wrong gun in attempting to show how the appellant had fired twice and then reloaded for the purpose of being ready to shoot someone else. Aside from it being the wrong gun, the evidence did not tend to show the appellant had in fact reloaded the weapon. The worst thing about the incident was that the prosecuting attorney had trouble loading the gun and it jammed. No doubt this apparent reckless use of a loaded shotgun in the presence of the jury had a tendency to arouse fear and bias in the jury and inflame the passions of the jury. Suppose the gun had fired; would it have been all right if the court directed the jury to remove it from their minds? I don't think so. I would condemn such activity before someone gets seriously injured or killed. I believe the defense attorney properly objected to this performance at the time it was taking place. I think the court should have stopped the demonstration and admonished the jury to disregard the performance of the prosecutor. There had been no proof presented to show that appellant had in fact reloaded the shotgun. Therefore, this part of the argument was outside the record.

Secondly, I disagree with the majority in approving the procedure utilized by the court in the penalty phase of this trial. As evidence of aggravating circumstances, the jury was allowed to consider evidence that the appellant had previously committed other felonies which grew out of the conduct of the appellant during the period of his escape and the murder for which he was convicted in the trial under consideration. This trial commenced on March 4, 1985. On the same day appellant offered to plead guilty to several charges growing out of the same episode. The trial court entered an order which was dated March 7, 1985, in which the court attempted to nunc pro tunc the judgment to March 4, 1985. The jury verdict reflects appellant was found guilty of attempted capital murder and capital murder. At page 32 of the appellant's abstract, it is noted that the jury found three aggravating circumstances and sentenced appellant to death by lethal injection. The amended felony information, pursuant to Ark. Stat. Ann. § 41-1001 (Repl. 1977), charging the appellant as an habitual offender, commences on page 33. Following the amended information, the judgment is found at page 34, sentencing appellant on the crimes which had already been presented to the jury as aggravating circumstances. There does not appear to

have been any separate proof that appellant had committed any prior felonies. These judgments should not have been presented to the jury because they had not yet been entered.

If this procedure is approved, then there is no reason why the court should not have stopped the proceeding after the jury announced its first verdict, on either the attempted capital murder or the capital murder, and informed the jury that now that he had been found guilty of one felony they could consider it in determining the other verdict.

We have not previously had any trouble with the wording of Ark. Stat. Ann. § 41-1303(3), as amended in 1977. In *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 285 (1982), we considered the identical provision wherein the appellant argued the jury improperly considered felony convictions that had simultaneously been entered. In rejecting Hill's argument that the jury may have considered these felonies arising out of the same episode for enhancement purposes or as aggravating circumstances, we stated:

> Appellant also argues that the jury may have improperly considered the six findings of guilt that they had just entered as felonies for purposes of enhancement and aggravation during the penalty phase of the trial. We find no merit to this argument. We can assume that the jury understood the court's instructions and understood the verdict forms which refer to conviction for *previous* felonies. [Emphasis in original.]

The wording of the statute seems clearly to apply only to felonies committed at a prior time. The defendant in *Hill* committed the same-episode felonies at different times and places — the robberies at one place and the murder and attempted murder at a later time and several miles away — the same as in the instant case. The verdict forms submitted to the jury in *Hill* referred to convictions for *previous* felonies. Under Ark. Stat. Ann. § 41-1303(3), the same-episode crimes should not have been considered by the jury during the penalty phase for purposes of enhancement and aggravation.

The majority opinion on this point appears to be based upon the Commentary, which is not a part of the statute or our

interpretation of it. The Commentary states that the prosecutor may now establish an aggravating circumstance through *proof* that the defendant *previously committed* another specified type of offense.

I concur in the result because I do not think either error was prejudicial in this case. The defense did not discover that the prosecutor had used the wrong shotgun until after the trial, but this does not amount to newly discovered evidence, nor can I say with any degree of certainty that the erroneous conduct by the State in the closing argument had any effect on the verdict.

The reason the second error (sentencing phase) was not prejudicial is that two other aggravating circumstances were found by the jury, and the defense specifically waived any objection to the offering of the same-episode felonies in the penalty phase of the trial.