Steven Douglas HILL, Appellant,

v.

A. L. LOCKHART, Director, Arkansas
Department of Correction, Appellee.

No. 89–2558.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1990.

Decided Feb. 28, 1991.

Rehearing and Rehearing En Banc
Denied May 30, 1991.

Charles L. Carpenter, Jr., North Little Rock, Ark., for appellant.

Jack Gillean, Little Rock, Ark., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Steven Douglas Hill was convicted of capital murder and sentenced to death for the murder of police officer Robert Klein. After exhausting his state remedies, *see Hill v. State*, 292 Ark. 144, 728 S.W.2d 510, *cert. denied*, 484 U.S. 873, 108 S.Ct. 208, 98 L.Ed.2d 159 (1987); *Hill v. State*, 289 Ark. 387, 713 S.W.2d 233 (1986), *cert. denied*, 479 U.S. 1101, 107 S.Ct. 1331, 94 L.Ed.2d 182 (1987), Hill filed a petition for writ of habeas corpus and the District Court[1] denied relief. *Hill v. Lockhart*, 719 F.Supp. 1469 (E.D.Ark.1989). Hill raises several issues in his appeal to this Court: (1) the jury was permitted to ignore a statutory mitigating circumstance; (2) the jury was permitted to consider an impermissibly vague aggravating circumstance; (3) the prosecutor made an improper argument during closing argument at the sentencing phase of the trial; (4) the District Court erred in not setting aside Hill's conviction and sentence on the basis of an affidavit by Hill's accomplice, Michael Cox, stating that Cox and not Hill shot the officer; (5) the District Court erred in admitting Hill's pretrial confession; and (6) Hill received ineffective assistance of counsel. We affirm.

On October 15, 1984, Hill and Cox escaped from a unit of the Arkansas Department of Correction. Shortly after dark, they arrived at the home of an elderly couple, Merle and Billie Jo Rice. They robbed the Rices of money, a 16–gauge shotgun, an automatic carbine, and a 20–gauge automatic shotgun, and tied them up. Hill threatened to rape Mrs. Rice and told Mr. Rice he was going to kill him but Cox dissuaded Hill from both actions. The escapees left the Rice home at approximately 10:30 p.m. in the Rice's pickup truck and proceeded to an unoccupied residence some two miles from the Rice home. Several police officers soon arrived at the scene after spotting the Rice's pickup in the driveway. As officer Robert Klein and Lieutenant Conrad Patillo approached the

---

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

garage behind which Hill was hiding, Klein was shot and killed by a 20–gauge shotgun blast. Patillo was fired upon but not injured. Several hours later, at approximately 4:30 a.m., tear gas forced the two men, who had barricaded themselves in the garage, to surrender.

The uncontroverted evidence at trial indicated that Cox had secreted himself in the attic of the garage prior to Klein's murder, and did not see or participate in the shooting. After his surrender, Cox was found in the attic with an automatic carbine that had not been fired. The 20–gauge automatic shotgun—the murder weapon—and twenty-one shotgun shells were found in a corner of the lower room where Hill had hidden behind a mattress. Hill and Cox were taken to police headquarters where they were read their Miranda rights and made videotaped statements. Hill readily admitted using the 20–gauge shotgun to kill Klein.

Hill was charged with capital murder, attempted capital murder, escape, burglary, theft, aggravated robbery, and kidnapping. He pled guilty to all charges except capital murder and attempted capital murder. Hill was tried by a jury and found guilty of both capital murder and attempted capital murder. After a bifurcated trial, the jury imposed the death sentence on the capital murder charge and fifty years imprisonment on the attempted capital murder charge. Hill now challenges his conviction and death sentence.

### I.

■ Hill first argues that his sentence should be set aside because the jury found no mitigating factors despite the fact that Hill was only eighteen at the time of the murder and the youth of the defendant is set out by statute as a mitigating factor to be considered in imposing the death sentence. Ark.Code Ann. § 5–4–605(4) (1987).

The jury verdict form concerning mitigating circumstances gave the jury four choices—unanimous agreement that a certain mitigating circumstance existed, partial agreement that a certain mitigating circumstance existed, unanimous agree-

ment that although there was evidence of a particular mitigating circumstance, it did not exist at the time of the murder, and unanimous agreement that there was no evidence of any mitigating circumstance. The jury selected the fourth option, indicating that they found no evidence of any mitigating circumstance. In rejecting Hill's argument that the jury's selection demonstrates that it improperly ignored the evidence of youth placed before it, the Arkansas supreme court stated:

> We do not interpret the jury's action to mean that they did not consider the evidence of mitigation that was offered. Rather we find the jury determined that the appellant's youth was not a mitigating factor, as they were entitled to do, and so indicated that no mitigating circumstances were found.

*Hill,* 289 Ark. at 396, 713 S.W.2d at 238. We find this interpretation entirely persuasive.

The Arkansas statute does not define youth in terms of mere chronological age. "Any hard and fast rule as to age would tend to defeat the ends of justice, so the term youth must be considered as relative and this factor weighed in the light of varying conditions and circumstances." *Giles v. State,* 261 Ark. 413, 421, 549 S.W.2d 479, 483 (en banc), *cert. denied,* 434 U.S. 894, 98 S.Ct. 272, 54 L.Ed.2d 180 (1977). In *Giles,* the defendant, aged twenty, contended that the statutory factor of youth was imprecise because the jury in his case failed to find youth as a mitigating factor while the jury in a recent prior case found that the defendant's twenty years of age mitigated against a death sentence. In rejecting this argument, the *Giles* court stressed the unique ability of the jury to observe the defendant throughout trial and assess his alleged "youth" based on his age, "mental and physical development, experience and criminal tendencies." 261 Ark. at 421, 549 S.W.2d at 483. The *Giles* court did remand the case for resentencing because the jury found no mitigating circumstances when the evidence was undisputed that the crime was committed when the defendant's ability to conform his con-

duct to the requirements of the law was impaired by mental disease or defect. 261 Ark. at 421, 549 S.W.2d at 484. *Giles* clearly demonstrates that the jury's obligation to consider mitigating evidence presented to it is consistent with its liberty to determine whether an individual's age operates as a mitigating circumstance at all. The determination of whether an individual qualifies as a youth for purposes of mitigating against the death penalty is a subjective one appropriately made by a properly instructed jury.

We believe the jury in the instant case evaluated Hill's age—eighteen and an adult under Arkansas law—his criminal history and experience, and the seriousness of the crimes for which he was charged, and simply rejected his youth as a mitigating factor. We do not agree with Hill's argument that the only proper selection for the jury to have made in this circumstance was option three—evidence of a particular mitigating circumstance was presented but did not exist at the time of the crime. This option seems to apply mainly to factors such as insanity or diminished capacity, *i.e.*, mental or physical deficiencies which may exist at one time in an individual's life and not exist at another. Hill was necessarily only one age when he committed the crime and there was no decision to be made by the jury as to his age at the time of the crime. The only decision to be made by the jury was whether Hill's youth mitigated against the death penalty. The jury was repeatedly reminded of Hill's relatively young age throughout the trial and in the opening and closing arguments of Hill's counsel. We are confident that the jury did not ignore this evidence. We believe the jury merely determined, as was its right, that Hill was not a youth for purposes of § 5–4–605(4) and that, therefore, no mitigating circumstance existed.

## II.

■ Hill next claims that the jury was permitted to consider an impermissibly vague aggravating factor in its decision to impose the death penalty. Specifically, Hill alleges that the statutory aggravating factor which allows the jury to impose death if it finds that the defendant previously committed a violent felony, Ark.Code Ann. § 5–4–604(3) (1987), is impermissibly vague because it does not define "previously committed." Hill argues that it was improper for the jury to be allowed to consider the violent crimes he committed at the Rice residence prior to Klein's murder because they were part of the same criminal episode as the murder.

This argument was advanced without success in Hill's direct appeal to the Arkansas supreme court. The court stated that the purpose of section 3 is "to allow the state to show that the defendant has a character for violent crimes or a history of such crimes." *Hill*, 289 Ark. at 395, 713 S.W.2d at 237. The court continued:

Since there are other avenues by which the state can prove crimes immediately connected with the principal crime, the only logical conclusion is that section (3) applies to crimes not connected in time or place to the killing for which the defendant has just been convicted. In this case the crimes used to prove an aggravated circumstance involved other victims, in another place and previously in time. Therefore, they were properly used as an aggravating circumstance.

289 Ark. at 395–96, 713 S.W.2d at 237. A state court's interpretation of state law is binding upon this Court. *See, e.g., Williams v. Lockhart*, 873 F.2d 1129, 1131 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 344, 107 L.Ed.2d 333 (1989).

Because other courts have found that crimes that occurred at a different time and place were part of a single criminal episode and should not be considered under section 3 as an aggravating circumstance, *see, e.g., Parker v. State*, 292 Ark. 421, 731 S.W.2d 756 (1987), Hill argues that section 3 is impermissibly vague and is applied by the Arkansas courts in an arbitrary manner. We do not agree. The facts of the cases cited by Hill to show the Arkansas courts' alleged arbitrariness can easily be distinguished from the circumstances of Hill's case and, in fact, the most recent case listed by Hill refers to the *Hill* court's

analysis with approval. *See Parker,* 292 Ark. at 428, 731 S.W.2d at 759. In *Parker,* the defendant shot at an individual outside her home and then entered the home and shot at two other persons, this time fatally. The Arkansas Supreme Court held that the attempted murder outside the home could not be considered to be a previous violent felony for purposes of section 3 because it "was so closely connected in both time and place" to the later murders. *Parker,* 292 Ark. at 428, 731 S.W.2d at 759. We have no difficulty holding that the factual differences between these two cases justify the different results reached by the *Hill* and *Parker* courts. The previous crimes committed by Hill that were used as an aggravating circumstance occurred in another place and involved victims who were not connected with the murdered police officer. Using the earlier violent crimes to establish an aggravating circumstance was neither arbitrary nor improper and did not impinge on Hill's constitutional rights in any manner.

### III.

◼ In his closing argument at the penalty phase of trial, the prosecutor attempted to rebut the defense's contention that Hill was a frightened youth who accidentally shot Klein by arguing that after firing at Klein and Patillo, Hill reloaded his weapon. In his argument, the prosecutor attempted to demonstrate how the shotgun was loaded. The prosecutor first asked one of the police officers in the courtroom to assist him but the trial court sustained defense counsel's objection to the officer's assistance. The prosecutor continued with his demonstration and after some difficulty with jamming, he succeeded in demonstrating that the gun would hold only five shells. He then argued that because the gun held five shells when Hill surrendered and two shots were fired, Hill necessarily

must have reloaded his weapon after killing Klein. Trial Transcript at 1730–34. Unfortunately, the prosecutor conducted his demonstration with the 16–gauge shotgun and not the 20–gauge shotgun that was the murder weapon. Defense counsel objected to the demonstration at trial and later made a motion for new trial based on the use of the wrong shotgun. This motion was denied after a hearing. Hill now argues that the prosecutor's argument was improper and renders his sentence "unfair and unreliable." Appellant's Brief at 21.[2]

As the District Court recognized, in a habeas proceeding the appropriate standard of review for allegedly improper statements by the prosecutor is "whether the prosecutors' [sic] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)). By analogy, we apply the same standard at the sentencing phase to determine whether Hill's sentence of death rather than life imprisonment is tainted by a denial of due process. We easily conclude that it is not.

The prosecutor made his argument regarding the shotgun in an attempt to prove the existence of the following aggravating circumstance:

( ) In the commission of the capital murder, Steven Douglas Hill knowingly created a great risk of death to a person other than the victim.

Jury Verdict Form 1. The Arkansas Supreme Court ruled that any misconduct on the part of the prosecutor was harmless because the jury failed to check this aggravating circumstance. *Hill,* 289 Ark. at 394, 713 S.W.2d at 236. Hill challenges this conclusion claiming that the court did not properly consider the impact of the prose-

---

**2.** Hill also argues that the prosecutor improperly referred to the personal qualities of the victim in his penalty phase closing argument. *Cf. Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). This claim was not raised in any of Hill's state court proceedings and was not mentioned in the District Court

opinion. Because Hill has failed to show cause for his procedural default or allege any actual prejudice arising therefrom, we are procedurally barred from considering his claim. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

cutor's demonstration on the following aggravating circumstance, which the jury did check:

( ) The capital murder was committed for the purpose of avoiding or preventing an arrest or effecting an escape from custody.

Jury Verdict Form 1. We are not persuaded by this argument. At the time of the murder, Hill was an escaped convict, on the run from committing several additional felonies, and hiding behind a garage as several police officers approached. When two officers advanced on him he shot at both of them, killing one. Whether he reloaded his shotgun after the shooting has little or no bearing on the jury's determination of whether he committed the murder in an attempt to avoid arrest. In his statement made to the police immediately following his arrest, Hill stated:

HILL: What it is, I got caught. Because I know if I hadn't have got caught, there'd be more people dead.

GAGE: What do you mean by that STEVE?

HILL: Oh like, when he started coming towards me, I just seen myself locked up, then I shot.

.     .     .     .     .

GAGE: Did you tell your partner that was with you today that you'd just do what you had to do, that you wasn't going back to the penitentiary?

HILL: Both of us made that statement.

Transcript of Hill's Pretrial Statement at 1849. Given the circumstances of Klein's murder and Hill's own statements after the shooting, we can hardly imagine a reasonable jury not finding that Hill shot Klein "for the purpose of avoiding or preventing an arrest."

While the prosecutor's demonstration may have been unwise and obviously was botched because he used the wrong shotgun, we conclude that it did not deprive

Hill of a fair sentencing procedure and provides him no basis for habeas relief.[3]

## IV.

On October 13, 1985, after Hill was convicted and sentenced but prior to the filing of briefs in Hill's direct appeal, Cox submitted a written statement in which he stated that he and not Hill had killed Klein.[4] Based upon this affidavit, Hill's counsel filed a petition with the Arkansas supreme court for a writ of error coram nobis asking for a hearing before the trial court. This petition was denied as was Hill's request for the court to reconsider its decision in his direct appeal. Hill argues that due process requires an evidentiary hearing be held to determine whether a new trial must be granted.

■ An evidentiary hearing must be granted if "there is a substantial allegation of newly discovered evidence." *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). However, "such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *Townsend*, 372 U.S. at 317, 83 S.Ct. at 759. To warrant a hearing, the new evidence must be shown to be likely to produce an acquittal if introduced at a new trial. *Hall v. Lockhart*, 806 F.2d 165, 168 (8th Cir.1986).

■ The District Court considered Cox's affidavit and heard Cox testify consistent with his affidavit at the habeas hearing. The court also reviewed the videotaped statements made by both Hill and Cox immediately following their arrests. The District Court then stated:

Based on his demeanor [at the habeas hearing], the inconsistencies developed on cross-examination, the video statements of both Cox and Hill, the video presentation of the crime scene, and the

---

**3.** We note that the evidence indicates that the 20–gauge shotgun also holds a total of five shells.

**4.** Cox pled guilty to the same offenses as did Hill in return for the dismissal of the capital murder and attempted capital murder charges. Cox was sentenced to an eighty-six-year term of imprisonment.

trial transcript, I am of the firm opinion and I find as a fact that Cox filed a false statement and that he committed perjury in the habeas hearing by testifying that he and not Hill fired the fatal shot at Klein.

*Hill,* 719 F.Supp. at 1477. A searching review of the entire record convinces us that the District Court's finding in this regard is not clearly erroneous.

This Court has stated that we view a recantation by a convicted codefendant with great skepticism and believe it should be supported by additional, independent evidence whenever possible. *Hall,* 806 F.2d at 168. Cox stated to the police following his arrest and to the state court in a preliminary hearing held concerning the voluntariness of his confession that he did not shoot Klein and, in fact, did not even see the shooting. Hill readily admitted to the police after his arrest that he shot officer Klein. We agree with the District Court that Cox's subsequent recantation and testimony at the habeas hearing was incredible and, if introduced at a new trial along with the statements of Cox and Hill after their arrest, the physical evidence at the crime scene, and the testimony of other witnesses, would not be likely to produce an acquittal or a sentence of life imprisonment. Accordingly, Hill is not entitled to any further evidentiary hearing based on this asserted new evidence.

## V.

Hill next argues that his conviction and sentence were obtained in violation of his due process rights because a statement made by him while in police custody was improperly admitted into evidence. Hill alleges both that the rights form he signed prior to his statement was deficient and that his confession was involuntary because he was intimidated by threats from several officers.

■ Hill's claim that he was not fully apprised of his constitutional rights prior to questioning is without merit. Hill was told that he had the right to remain silent, anything he said would be used against him in court, he could have an attorney present prior to and during questioning, if he could not afford an attorney one would be appointed for him, he could stop the questioning at any time, and that he had the right to waive any or all of these rights and make a statement to the police. Hill answered that he understood each of these rights, initialed each individual answer, and signed the rights form prior to any questioning. The rights form read Hill by the police fully complied with the constitutional standards set out in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ We are equally unpersuaded by Hill's contention that his confession was involuntary. Specifically, Hill alleges he was coerced into giving his videotaped statement by officers who threatened him and then played with their guns off-camera to intimidate Hill. The police officers involved in Hill's arrest deny these accusations.

■ The admissibility of a defendant's confession is a mixed question of law and fact and as such merits independent consideration by a federal court in a habeas proceeding. *Miller v. Fenton,* 474 U.S. 104, 112, 106 S.Ct. 445, 450, 88 L.Ed.2d 405 (1985). However, "subsidiary factual questions, such as ... whether the police in fact engaged in the intimidation tactics alleged by defendant," involved in a state court's determination of voluntariness are factual determinations entitled to the presumption of correctness under 28 U.S.C. § 2254(d) (1988). *Miller,* 474 U.S. at 112, 106 S.Ct. at 450 (citing *LaValle v. Delle Rose,* 410 U.S. 690, 693–95, 93 S.Ct. 1203, 1205–06, 35 L.Ed.2d 637 (1973) (per curiam)). After a lengthy pretrial hearing held in response to Hill's motion to suppress his statement, the trial court found that Hill's allegations of intimidation were not credible and his confession was voluntary, and admitted it into evidence. In Hill's direct appeal, the Arkansas supreme court considered his claim of intimidation at length and determined that Hill's argument was without merit and that the confession properly was admitted. *Hill,* 713 S.W.2d at 235.

We have reviewed carefully, as did the District Court, Hill's videotaped statement to police and the pretrial hearing regarding its admissibility held by the trial court. At the pretrial hearing, Hill acknowledged that he was read his rights and understood what rights were available to him, but chose not to exercise those rights at the time. During his statement to police, Hill was relaxed, forthcoming, and consistent. His demeanor lends no support to his allegations of coercion and we find no evidence that any coercion occurred. Basing our determination on "the totality of the circumstances," *Miller,* 474 U.S. at 117, 106 S.Ct. at 453, we conclude that Hill's statement was voluntary.

Hill's confession was obtained in a manner consistent with constitutional safeguards and his challenge to its admission therefore affords him no basis for habeas relief.

## VI.

█ Finally, Hill claims that he received ineffective assistance of counsel in that his counsel failed to (1) object to the prosecutor's demonstration with the shotgun; (2) object to the use of the previously committed felonies as evidence of an aggravating circumstance; and (3) properly make Cox's post-trial affidavit a part of the record for appellate review. These contentions have no merit.

The now familiar standard for judging ineffective assistance of counsel claims is set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail, an appellant must demonstrate that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. 466 U.S. at 687, 694, 104 S.Ct. at 2064, 2068. Hill has fallen far short of meeting this burden in any of his ineffective assistance claims.

First, the record indicates that Hill's counsel did object to the prosecutor's demonstration with the shotgun during closing argument. Every court that has reviewed the propriety of the prosecutor's demonstration has found that the issue was preserved for appeal by way of a proper objection and we do not understand Hill's argument in this regard. Second, as the Arkansas supreme court, the District Court, and this Court have found, evidence concerning the crimes Hill committed prior to Klein's murder clearly was admissible to prove the aggravating circumstance contained in Ark.Code Ann. § 5–4–604(3). Accordingly, Hill was not prejudiced by his counsel's failure to object to the introduction of this evidence. Third, Hill's counsel attempted to get Cox's affidavit into the record through the writ of error coram nobis. The fact that he did not succeed does not constitute ineffective assistance of counsel. Furthermore, as our previous discussions regarding the credibility of Cox's recantation make clear, Hill cannot demonstrate that the Arkansas supreme court's consideration of Cox's affidavit would likely have led to a different result.

## VII.

We have given careful consideration to each of Hill's constitutional challenges to his conviction and sentence. Because we find that none of Hill's claims has merit, we affirm the District Court's denial of his petition for writ of habeas corpus.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent, and I would reverse and remand for resentencing.

Ark.Code Ann. § 5–4–605(4) (1987) specifies "the youth of the defendant" as a mitigating factor in assessing whether a sentence of death should be imposed. The statute does not define "youth." The Arkansas Supreme Court has indicated that "[a]ny hard and fast rule as to age would tend to defeat the ends of justice, so the term youth must be considered as relative and this factor weighed in the light of varying conditions and circumstances." *Giles v. State,* 549 S.W.2d 479, 483, 261 Ark. 413, 421 (banc) (1977) (upholding jury's finding that defendant's age of 19 or 20 was not a mitigating circumstance but

rejecting its finding of no mitigating circumstances when evidence revealed defendant was an imbecile and suffered from organic brain syndrome).

The jury in this case was given a form for assessing the existence of mitigating circumstances that gives the jury four choices:

(1) Unanimous agreement that a factor exists.

(2) Agreement by one or more jurors that a factor exists.

(3) A finding that evidence regarding a factor was introduced but the jury unanimously agreed that factor did not exist at the time of the murder.

(4) No evidence of any mitigating factor.

Defendant introduced evidence that he was 18 at the time of the offense, and "youth" was among the mitigating factors which the jury was instructed to consider.

Appellant argues that if the jury had properly considered and rejected his mitigating evidence, it would have chosen option no. 3. Although option no. 3 is no model of clarity, it would have been a far better choice than the selection of option no. 4. Option no. 4 states there was "no evidence of any mitigating factor." This is contrary to the undisputed evidence that appellant at the time of the offense was in fact 18 years of age. As noted above, the youth of a person is set out by statute as a mitigating factor to be considered in imposing the death sentence. Ark.Code Ann. § 5-4-605(4) (1987). The jury selection of choice no. 4 indicates that it impermissibly ignored or disregarded the mitigating evidence. A finding of "no evidence of any mitigating factor" is not the same thing as considering youth as a factor and then rejecting it. A finding of "no evidence" seems to say that the jury found appellant was not even a youth. I would have no quarrel if the jury had been permitted to find that appellant was a youth, but his youth did not excuse his conduct. Although it is true that a jury may reject evidence, it is not true that it may ignore or disregard evidence material to an issue.

Even if the Arkansas Supreme Court is willing to speculate by saying the jury choice of option no. 4 does not "necessarily indicate that the jury ignored evidence of appellant's age," in a death case, this I am unwilling to do.

Here, the jury checked the wrong box, and to affirm the decision of the district court requires this court to second guess the jury's thought process. Consequently, I would reverse and remand for resentencing on this issue, because I believe that the jury might have misunderstood what it could and could not consider.