**Steven Douglas HILL, Petitioner,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Respondent.**

**No. PB–C–88–376.**

United States District Court, E.D. Arkansas, Pine Bluff Division.

Aug. 25, 1989.

Charles L. Carpenter, Jr., North Little Rock, Ark., for petitioner.

Jack Gillean, Asst. Atty. Gen., Little Rock, Ark., for respondent.

## MEMORANDUM OPINION

HENRY WOODS, District Judge.

### I. FACTS

Petitioner Stephen Douglas Hill escaped from a unit of the Arkansas Department of Correction shortly before 3:00 p.m. on October 15, 1984. Joining in the escape was

another inmate, Michael Cox. Shortly after dark they arrived at the home of Merle Rice and his wife, Billie Jo Rice, in Woodson, Arkansas. After robbing the Rices of money, a 16–gauge pump shotgun, and an automatic carbine, they tied them up. At about 10:15 p.m. Merle Rice's brother James (Buck) Rice, who made his home with the couple, returned from squirrel hunting. They also tied him up and took his 20–gauge automatic shotgun. During the course of the evening, Hill made sexual advances on Mrs. Rice (Trial Tr. 1388) and threatened to rape her but was dissuaded by Cox. While at the Rice home, Hill told Mr. Rice that he was going to die. (Trial Tr. 1371) In his statement given immediately after his apprehension, Cox claimed to have saved the lives of the Rices. The escapees left the Rice home at about 10:30 p.m. in James (Buck) Rice's pickup truck. Because of the Rices' feeling that Cox had protected them from Hill, they later asked the prosecuting attorney to take this into consideration in his prosecution of Cox.

Hill and Cox then proceeded to the Cook residence about two miles from the Rice home. The Rice truck was observed there by a state trooper who radioed for backup. The pickup was actually parked behind a room that was attached to the Cook main residence but somewhat apart from it. This room was accessible to the Cook residence by a door which was locked. A number of police cars arrived at the scene about midnight, including Officers Robbie Klein and Lieutenant Conrad Pattillo. The stolen pickup was parked to the right rear of the Cook family's station wagon. Klein and Pattillo were moving along on each side of the station wagon when Klein was shot and killed by a 20–gauge blast fired from near a corner of the room, described *supra*. This location was occupied by Hill, according to the overwhelming physical and testimonial evidence. Hill then fired at Pattillo and retreated into the room and barricaded himself behind some mattresses. The 20–gauge shotgun, found at this location, had been loaded with the safety off. (Trial Tr. 1432). At the time of the shooting of Klein, the evidence is conclusive that Cox had secreted himself in an attic above this room and was not present when the shooting occurred. He was in no position either to see the shooting or participate in it. After Cox gave himself up, by descending from the attic by drop steps, the carbine which he was carrying was found in the attic. It had not been fired. In the area where Hill was apprehended, there were twenty-one, 20–gauge shotgun shells. Although surrounded, the men refused to heed loudspeaker demands to surrender. Tear gas forced them to give up about 4:30 a.m.

Cox and Hill were taken to State Police headquarters. They were given their *Miranda* rights, and videotaped statements were taken forthwith from each of them. There is no evidence in the record that any intimidation or pressure of any kind was used on these men. The video tapes were played at the *habeas* hearing. They show the two men relaxed, at ease, and very forthcoming. They both gave a matter-of-fact recitation of events from the time of their escape. At daylight state police took a video tape of the crime scene, which was also shown at the *habeas* hearing. This video confirmed all aspects of both men's statements.

Hill admitted that he had the 20–gauge automatic shotgun, which the autopsy showed to be the fatal weapon. He readily admitted shooting Klein. "When he started coming toward me, I just seen myself locked up and then I shot." Hill also stated that if he had not been caught, "[T]here would be more people dead." Earlier in the day he had told Cox that he did just what he had to do and that he wasn't going back to the penitentiary.

Cox testified at the *habeas* hearing that his video statement was voluntarily given to the officers. He told the state police interrogators that he secreted himself in the attic in the area where the carbine was found, that he heard shooting but did not see anything. He stated that Hill had the 20–gauge shotgun. I am convinced that both Hill and Cox told the truth in the statements they gave to the state police on video shortly after Klein was killed.

## II. PROCEDURAL HISTORY

Hill was charged with capital murder, attempted capital murder, escape, burglary, theft, aggravated robbery and kidnapping. He pled guilty to all these charges except capital murder and attempted capital murder. On a plea of not guilty to the latter, Hill was tried by a jury, which found him guilty of both charges. On March 8, 1985, after a bifurcated trial, the jury imposed the death sentence on the capital murder charge and fifty years imprisonment for attempted murder.

Prior to Hill's trial, he was given a *Denno* hearing on the voluntariness of his confession. (Tr. Trans. Vol. II). After a full hearing conducted on February 11, 1985, which consumed an entire volume of the trial transcript, Circuit Judge Jack L. Lessenberry found that the confession of Hill was voluntary. The record completely supports Judge Lessenberry's decision. Hill testified at the *Denno* hearing but not at the trial. At the omnibus hearing Cox testified that he did not fire a shot at the officer and did not see the shot fired. He heard shooting but could not see it from his position in the attic. (Trial Tr. 186). He testified that he did not know an officer had been killed until after he gave his statement. (Trial Tr. 180).

Hill appealed his conviction and sentences to the Arkansas Supreme Court which affirmed *Hill v. State*, 289 Ark. 387, 713 S.W.2d 233 (1986), *cert. denied*, 479 U.S. 1101, 107 S.Ct. 1331, 94 L.Ed.2d 182 (1986). He subsequently filed a Rule 37 request for post-conviction relief. His petition was denied. *Hill v. State*, 292 Ark. 144, 728 S.W.2d 510 (1987), *cert. denied*, 484 U.S. 873, 108 S.Ct. 208, 98 L.Ed.2d 159 (1987). Thus, petitioner's state remedies have been exhausted.

## III. GROUNDS ASSERTED FOR *HABEAS* RELIEF

Petitioner has asserted six grounds in his *habeas* petition as follows: (1) Hill's video statement given to the state police was not voluntary; (2) the jury was permitted to ignore evidence of mitigation; (3) the jury was permitted to consider an impermissibly vague, aggravating factor alleging prior acts of violence; (4) the prosecuting attorney's demonstration of how Hill had reloaded the shotgun after killing Klein constituted prosecutorial misconduct; (5) while the appeal was pending, Cox had submitted a written statement alleging that he, not Hill, had killed Klein; and (6) counsel was ineffective. These contentions will be discussed *seriatim.*

### A. Voluntariness of the Confession.

At the *Denno* hearing Hill claimed that he was threatened by police officers who were armed, and that one of the officers "played" with his gun in an effort to intimidate the petitioner. The officers denied these accusations. The trial court found the confession to be voluntary. The Supreme Court of Arkansas made an independent determination of the issue and dealt with it at length in the petitioner's direct appeal. "Appellant's argument is without merit and the confession was properly admitted." *Hill v. State*, 289 Ark. at 392, 713 S.W.2d at 235.

In a *habeas corpus* proceeding I am also obligated to make an independent factual determination with respect to the voluntariness of the confession. *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, '88 L.Ed.2d 405 (1985). The voluntariness of a confession is not one of the state court findings of fact entitled to presumption of correctness under 28 U.S.C. 2254(d). *Id.* 474 U.S. at 112, 106 S.Ct. at 450. However, as Justice O'Conner pointed out in this opinion, "the federal habeas court should, of course, give great weight to the considered conclusion of a cogent state judiciary." *Id.* at 112, 106 S.Ct. at 450. The final decision on "voluntariness" thus rests with this court after a consideration of "the totality of the circumstances." *Id.* at 117, 106 S.Ct. at 453.

I have carefully examined the trial transcript, particularly that part concerned with the *Denno* hearing. I have also monitored the video tape of Hill's confession, along with a video tape of the crime scene. I am convinced that Hill's video confession,

transcribed, and signed by him, was voluntary and was a substantially correct account of his activities between his escape and apprehension. My conclusion is based not only on the testimony of the officer but on the corroboration afforded by the view of the crime scene and by the demeanor of Hill during his interrogation. I base my firm opinion in this regard on "the totality of the circumstances."

### B. The Jury Was Permitted to Ignore Evidence of Mitigation.

■ Petitioner argues that his sentence should be set aside because the jury found no mitigating factors, in spite of the fact that the youth of a defendant is set out in the statute as a mitigating factor to be considered. A.C.A. § 5–4–605(4) (1987). Hill was eighteen years of age at the time of the murder. This issue was raised by petitioner in a motion for new trial and in his direct appeal to the Supreme Court of Arkansas. The trial judge denied a new trial on this ground. (Trial Tr. 1793–94, 1829–30). The Supreme Court of Arkansas distinguished *Giles v. State*, 261 Ark. 413, 549 S.W.2d 479 (1977) on which petitioner relies and made short shrift of petitioner's argument:

> We do not interpret the jury's action to mean that they did not consider the evidence of mitigation that was offered. Rather we find the jury determined that the appellant's youth was not a mitigating factor, as they were entitled to do, and so indicated that no mitigating circumstances were found. No error was committed.

*Hill v. State*, 289 Ark. 387, 396, 713 S.W.2d 233 (1985).

I am in agreement with the Supreme Court of Arkansas with reference to this issue. The trial court properly instructed the jury that form (2) of the verdict forms listed some mitigating factors it could consider. (Trial Tr. 95, 1720). The youth of the defendant was specifically included on this form. (Trial Tr. 84, 1765). *See* A.C.A. § 5–4–605(4) (1987). The jury was told it could find other mitigating circumstances, and space was provided for their listing.

(Trial Tr. 1720, 84–86, 1764–65). In closing for the defense in the penalty phase, the youth of the defendant was repeatedly stressed. (Trial Tr. 1742, 1743, 1744, 1745, 1747).

Nothing in the record suggests that the jury disregarded petitioner's youth or failed to give it consideration. It was repeatedly placed before the jury in the verdict forms and closing argument. The jury simply rejected his youth as a mitigating factor, which was clearly within its province.

The Supreme Court of the United States in *Stanford v. Kentucky*, —— U.S. ——, 109 S.Ct. 2969, 106 L.Ed.2d 306 and *Wilkins v. Missouri*, —— U.S. ——, 109 S.Ct. 216, 102 L.Ed.2d 207 decided June 26, 1989, held that death sentences imposed on two individuals—one 17 years, four months, and the other 16 years, 6 months, were constitutional and did not constitute cruel and unusual punishment under the Eighth Amendment. "We discern neither a historical nor a modern societal consensus forbidding the imposition of capital punishment on any person who murders at only sixteen years of age." 109 S.Ct. at ——. Petitioner was not only older but was an adult under Arkansas law for all purposes.

### C. The Jury Was Permitted to Consider an Impermissibly Vague, Aggravating Fact Alleging Prior Acts of Violence.

■ Petitioner's specific complaint is that other offenses committed by him during his escape and prior to the murder were used to support the statutory aggravating circumstances that petitioner had previously committed prior violent felonies. A.C.A. § 5–4–604(3) (1987). These other offenses occurred on the same day as the murder. Respondent acknowledges that the three aggravated robbery and the kidnapping convictions formed the basis of the state's proof as to the aggravating circumstances that the petitioner had previously committed prior violent felonies. The judgments establishing the convictions were admitted without objection into evidence at the penalty phase of the trial. (Trial Tr. 1714–17).

This argument was advanced without success in petitioner's direct appeal to the Arkansas supreme court. The court pointed out that the reason for Section (3) is to allow "the state to show that the defendant has a character for violent crimes or a history of such crimes." 289 Ark. 387, 395, 713 S.W.2d 233.

> Since there are other avenues by which the state can prove crimes immediately connected with the principal crime, the only logical conclusion is that section (3) applies to crimes not connected in time or place to the killing for which the defendant has just been convicted. *In this case the crimes used to prove an aggravated circumstance involved other victims, in another place and previously in time. Therefore, they were properly used as an aggravating circumstance.*

*Id.* at 395–96, 713 S.W.2d 233 (emphasis added).

Much weight must be accorded to the interpretation of an Arkansas statute by the Arkansas supreme court, particularly when the interpretation is sensible and logical. I find the Arkansas court's decision met both of these criteria. The Arkansas court's view of this facet of the case in no wise impinged due process.

D. The Prosecuting Attorney's Demonstration of how Hill Had Reloaded the Shotgun after Killing Klein Constituted Prosecutorial Misconduct.

■ In order to answer the defense argument that the petitioner was a frightened youth who accidentally shot Klein and who did not knowingly create risk to others, the prosecutor argued that after shooting Klein and shooting at Pattillo, petitioner reloaded the shotgun. It was an automatic 20–gauge which contained five shells at the time Hill was apprehended. (Trial Tr. 1403). The prosecutor attempted to demonstrate how the gun was reloaded. He had first asked one of the police officers to assist in this demonstration. The trial judge sustained an objection to any assistance from the officer. (Trial Tr. 1731). The prosecutor then continued with the demonstration without the assistance

of a third party. After some difficulty with jamming, he finally demonstrated that the gun would hold only five shells. This demonstration was made in connection with the following argument: "But I do know that I put five in there. And I do know the testimony was that there were five in this bag. And five came out of the gun. And only five will go in there. And two were shot. So what you have is a situation where this defendant after firing at Klein, after firing at Pattillo put two more in there."

Defense counsel made a nonspecific objection to the demonstration by Mr. Piazza, the prosecutor, and moved for a mistrial without stating the grounds therefor. (Trial Tr. 1732). Later a motion for a new trial was made on the basis that in the demonstration Piazza had used the 16–gauge shotgun in his demonstration and not the 20–gauge. After a hearing on this and other contentions, the motion was denied. (Trial Tr. 1776–1882).

These issues were raised in the direct appeal to the Supreme Court of Arkansas:

> The appellant states that, although the murder weapon, a 20–gauge shotgun, contained five shells when it was found, there was no proof that the gun held *only* five shells. In addition, when the prosecutor conducted the demonstration, he mistakenly used the wrong gun, a 16–gauge shotgun also found at the scene. Although the appellant's counsel lodged a general objection to the demonstration, there was no specific objection during the closing argument to the use of the wrong gun.

*Hill v. State,* 289 Ark. 387, 393, 713 S.W.2d 233 (1986).

The court cited numerous cases to show that such demonstrations are permissible under Arkansas law. *Id.* at 393–94, 713 S.W.2d 233. "As to the use of the wrong gun for the demonstration, without an objection at the trial, this could not have been a ground for a mistrial. Nor is it newly discovered evidence since it would have been discovered when it occurred during the trial and there is no indication that the evidence is 'important' as required by Ark.

Stat.Ann. § 43–2203(6) (Repl.1977)." *Id.* at 394, 713 S.W.2d 233. "By the demonstration the prosecutor was attempting to establish the proposition that the appellant knowingly created a great risk of death to a person other than the victim, premised on the fact that the appellant reloaded after shooting the police officers." *Id.* at 394, 713 S.W.2d 233. As the Arkansas supreme court properly observed, the jury failed to check the following possible aggravating circumstances: "In the commission of the capital murder Steven Douglas Hill knowingly created a great risk of death to a person other than the victim." The jury checked other aggravating circumstances but not this one. (Trial Tr. 1783–84).

I agree with the detailed analysis of this issue by the Supreme Court of Arkansas. In a *habeas* proceeding my review of the prosecutor's conduct is more narrow than the supervisory power of the Supreme Court of Arkansas. I am governed by the recent decision of the Supreme Court of the United States in *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986):

> Prosecutor McDaniel made several offensive comments reflecting an emotional reaction to the case. These comments undoubtedly were improper. But as both the District Court and the original panel of the Court of Appeals (whose opinion on this issue still stands) recognized, it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright,* 699 F.2d [1031] at, 1036 [ (11th Cir.1983) ]. The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637 [94 S.Ct. 1868, 40 L.Ed.2d 431] (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* at 642 [94 S.Ct. at 1871].

*Id.* 477 U.S. at 180–81, 106 S.Ct. at 2471–72.

If the conduct of the prosecutor in *Darden* is compared with that of Mr. Piazza in the case at bar, the weakness of petitioner's argument becomes apparent. About all that can be said about Mr. Piazza's argument is that he showed unfamiliarity with firearms. Here is what the Supreme Court said about the argument in *Darden:*

> That argument deserves the condemnation it has received from every court to review it, although nó court has held that the argument rendered the trial unfair. Several comments attempted to place some of the blame for the crime on the Division of Corrections, because Darden was on weekend furlough from a prison sentence when the crime occurred. Some comments implied that the death penalty would be the only guarantee against a future similar act. Others incorporated the defense's use of the word "animal."

*Id.* at 179–80, 106 S.Ct. at 2470–71. Yet, the Supreme Court under a *habeas* standard of review agreed "with the reasoning of every court to consider these comments that they did not deprive petitioner of a fair trial." *Id.* at 181, 106 S.Ct. at 2471.

E. Cox Submitted a Written Statement on October 13, 1985, Alleging that He and not Hill Killed Klein.

■ On October 13, 1985 Cox submitted a written statement in which he took responsibility for the murder of Trooper Klein. He testified to similar effect at the *habeas* hearing. I observed his demeanor carefully while he was testifying. I also observed his video statement taken immediately after the trial. I find that Cox told the truth in his video statement taken a few hours after the murder and that he lied in his October 13, 1985 statement and committed perjury in the *habeas* hearing. In my opinion, Cox feels that he is facing a long prison term, that there is no likelihood of his being tried for the murder of Klein and that he can save the life of his friend and partner-in-crime by a belated confession that he was the trigger man.

The written statement of Cox came more than seven months after Hill's trial. At no time during Hill's trial was the defense advanced that Hill did not shoot Klein.

The defense was that Hill's mental state was such that he did not kill Klein deliberately and with premeditation so as to constitute a capital offense. As his lawyer stated in the closing argument on the guilt phase, "And as the police approached in what was a life threatening situation for him, he acted on sudden impulse. He shot. He fired. It was a terrible decision. You can't justify it. You can't excuse it. But it was not his conscious object, as the law says, to shoot a police officer." (Trial Tr. 1649–50).

In commenting on Hill's video confession, his lawyer pointed out later in his closing argument: "It was a statement that he gave voluntarily to Officer Gage. He didn't have to give a statement. He was advised he didn't have to. He wanted to. He gave one. He didn't ask for a lawyer.... *He told this account just the way it happened.*" (Trial Tr. 1653).

I find that these are accurate statements by Hill's lawyers and that the tragic incident occurred substantially as Hill depicted it in his video confession of the murder. I find that the video statement by Cox viewed at the *habeas* hearing was likewise substantially correct and that he was not a participant in the shooting of Klein.

Not only did Cox not come forward at the trial with testimony that he had killed Klein, but at the *Denno* and omnibus hearing he testified as follows:

Q So you weren't aware of what all was going on? You were oblivious to it?

A No, sir, I did not.

Q On page 4 of the statement and you saw the screen this morning did you not?

A Yes, sir.

Q Where Mr. Gage asked, did you fire a shot at that Officer and you said no, sir?

A That's right. I didn't.

Q So you knew what they were talking about did you not?

A About some shooting. I heard some shooting. That's the only thing I know.

Q And you didn't ever see anything after there was a shot fired?

A No.

(Trial Tr., Vol. II, 176).

On the basis of the statement by Cox, petitioner filed a writ of error *coram nobis*, since an appeal was pending at the time. This writ, as the Arkansas supreme court noted, "is an excessively rare remedy meant to provide relief where none is available on appeal because the facts are not in the record." 289 Ark. 387, 389, 713 S.W.2d 233. The Supreme Court of Arkansas denied the writ and refused to reconsider its decision when the matter was raised again on the direct appeal. *Id.* at 389, 713 S.W.2d 233.

While an evidentiary hearing was not held in state court on the basis of Cox's October 13, 1985 affidavit after the Supreme Court of Arkansas denied the writ of error *coram nobis*, the "confession" was fully explored in the *habeas* hearing before me. The matter was also raised in petitioner's Rule 37 petition for post-conviction relief. With regard to the "confession" of Cox, the Supreme Court of Arkansas said:

The final argument is that counsel was ineffective in failing to open the record to include a petition for writ of error coram nobis and the "confession" of a co-defendant that he, not Hill, shot the victim. Even if the record on appeal did not include this material, the petitioner has failed to show any prejudice resulted therefrom because such a petition was filed, and considered and denied by per curiam dated December 9, 1985. *See Hill v. State,* 289 Ark. at 398, 713 S.W.2d 233.

*Hill v. State,* 292 Ark. 144, 147, 728 S.W.2d 510, 512.

With respect to newly discovered evidence in relation to a federal *habeas* procedure, I am guided by the Supreme Court of the United States in *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963):

Where newly discovered evidence is alleged in a habeas application, evidence which could not reasonably have been presented to the state trier of facts, the federal court must grant an evidentiary

hearing. *Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus.* Also, the district judge is under no obligation to grant a hearing upon a frivolous or incredible allegation of newly discovered evidence.

*Id.* 372 U.S. at 317, 83 S.Ct. at 759 (emphasis added).

On the *habeas* petition I held an evidentiary hearing in which the matter of the Cox's "confession" was fully explored. I heard the testimony of Cox with regard to this "confession." Based on his demeanor, the inconsistencies developed on cross-examination, the video statements of both Cox and Hill, the video presentation of the crime scene, and the trial transcript, I am of the firm opinion and I find as a fact that Cox filed a false statement and that he committed perjury in the *habeas* hearing by testifying that he and not Hill fired the fatal shot at Klein. I find that Hill was the trigger man and that Cox's testimony to the contrary is frivolous and incredible.

**F. Ineffective Assistance of Counsel**

The petitioner claims that he was denied the effective assistance of counsel under the Fourteenth and Sixth Amendments. Petitioner lists counsel's deficiencies as failing to do the following:

1. present evidence of witnesses under subpoena at trial to give testimony regarding the circumstances of his youthfulness;

2. properly object to the prosecutor's exhibition of the shotgun;

3. advise him of his right to testify and the benefits or disadvantages of his decision;

4. properly object to the criminal episode concept as applied to the circumstances of the case; and

5. properly include in the record the statement of Cox, limiting review by the Arkansas Supreme Court of mitigation available to him.

With the exception of number 4, all of these arguments were presented to the Supreme Court of Arkansas in Hill's Rule 37 petition. *Hill v. State,* 292 Ark. 144, 728 S.W.2d 510 (1987). This failure as to ground (4) was a procedural default under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and the petitioner has not demonstrated either cause or prejudice. As a matter of fact, the Supreme Court of Arkansas fully considered Ground (4) in its direct appeal, as was pointed out in subsection (C) of this opinion. I have likewise considered this ground and concluded, as did the Supreme Court of Arkansas, that the evidence of the crimes committed previously at another location involving different victims was clearly admissible. Petitioner was not therefore prejudiced by his counsel's failure to object to this evidence.

Petitioner claims that the counsel was somehow responsible for the alleged error of the Supreme Court of Arkansas in denying Hill a Rule 37 post-conviction hearing. Such a denial was claimed to be a violation of the Fourteenth Amendment. I do not follow petitioner's argument in this regard. However, this alleged error is not reviewable in a federal *habeas* proceeding, as the Court of Appeals held in *Mitchell v. Wyrick,* 727 F.2d 773 (8th Cir.1984). The court quoted from *Williams v. Missouri,* 640 F.2d 140 (8th Cir.) *cert. denied,* 451 U.S. 990, 101 S.Ct. 2328, 68 L.Ed.2d 849 (1981):

"Even where there may be some error in state post-conviction proceedings, this would not entitle appellant to federal habeas corpus relief since appellant's claim here represents an attack on a proceeding collateral to detention of appellant and not on the detention itself...."

727 F.2d at 774. The court also pointed out in *Mitchell v. Wyrick, supra,* that "because state post-conviction proceedings are civil in nature, the Sixth Amendment's right to effective assistance of counsel does not attach." *Id.* at 774.

With regard to counsel's performance at the trial, the applicable standard was delineated in *Strickland v. Washington,* 466

U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel guaranteed the defendant by the Sixth Amendment." Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* 466 U.S. at 687, 104 S.Ct. at 2064.

Petitioner has fallen far short of meeting the standards set out in this case. As noted above, the Supreme Court of Arkansas considered the ineffectiveness of counsel issue at length in its opinion of May 4, 1987. *Hill v. State*, 292 Ark. 144, 728 S.W.2d 510 (1987). I am in complete agreement with that opinion. However, I have given independent consideration to the merits of this ground. At the trial petitioner was represented not only by the Chief Public Defender of this county but also by two of his assistants. I have examined the transcript of the trial. I find that petitioner was represented with ability and diligence in the trial and the appeal. This was a difficult case to defend, but in my view counsel raised every reasonable defense.

 Petitioner points to five specific instances, *supra*, where counsel failed to protect his interests. I have already dealt with number 4. I fail to see how additional testimony on petitioner's youthfulness would have assisted him. His youthfulness was repeatedly brought out by his counsel during the trial and was forcefully argued by counsel in closing. Counsel did object to the prosecutor's demonstration with the shotgun. With reference to the failure to include the statement of Cox in the record on appeal, this came to light after the appeal was already pending. Counsel tried to get it into the record through the unusual writ of error *coram nobis*. This statement would hardly have assisted petitioner because it was an obvious fabrication which was easily demonstrable. Finally petitioner argues that he was not advised of his right to testify. As the Supreme Court of Arkansas pointed out, he "has not demonstrated that his failure to testify resulted in actual prejudice to him." As has been noted, *supra*, trial counsel took the understandable position that his video statement contained a true and accurate statement of events during the pertinent period. In view of the fact that his account was already before the jury, it would hardly have benefited petitioner to subject himself to what would certainly have been a vigorous cross-examination. Although the outcome of this trial could hardly have been worse for petitioner, his chance of avoiding the death penalty would not have been improved by taking the stand. In view of this record, the decision not to call petitioner to the stand was a wise decision. "The petitioner bears the burden of successfully challenging particular acts and omissions of his attorney which were not the result of reasonable professional judgment; it is not enough to complain after the fact that he lost, when in fact the strategy at trial may have been reasonable in the face of an unfavorable case." *Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir.1987). *See also Hayes v. Lockhart*, 852 F.2d 339 (8th Cir.1988), *reh. denied*, 869 F.2d 358 (1989).

## IV. CONCLUSION

Petitioner has failed to demonstrate grounds for grant of the writ of *habeas corpus*. In my opinion he has had able and diligent representation at all stages of the proceedings, including the *habeas* proceedings before me. The trial judge was one of the finest criminal lawyers in Arkansas during a distinguished career at the bar. He was vigilant in protecting the petitioner's rights at pre-trial proceedings, the ac-

tual trial, and the post-trial proceedings. In spite of the fact that the petitioner had murdered a brother officer, the Arkansas State Police were most professional in their handling of the investigation and particularly the interview of the petitioner and his fellow escapee.

The petition is denied.