**Steven Douglas HILL,
Plaintiff/Petitioner,**

v.

**A.L. LOCKHART, Director, Arkansas
Department of Correction,
Defendant/Respondent.**

No. PB–C–92–240.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

April 30, 1992.

Mark Cambiano, Morrilton, Ark., for plaintiff/petitioner.

Jack Gillean, Asst. Atty. Gen., State of Ark., Little Rock, Ark., for defendant/respondent.

## MEMORANDUM OPINION

HENRY WOODS, District Judge.

## I. PROCEDURAL HISTORY

Petitioner Stephen Douglas Hill was convicted of capital murder and sentenced to death by a jury in Pulaski County on March 8, 1985. His conviction was affirmed by the Arkansas Supreme Court, *Hill v. State,* 289 Ark. 387, 713 S.W.2d 233 (1986), *cert. denied,* 479 U.S. 1101, 107 S.Ct. 1331, 94 L.Ed.2d 182 (1987). He subsequently filed a Rule 37 request for post-conviction relief, which was denied. *Hill v. State,* 292 Ark. 144, 728 S.W.2d 510 (1987). Review was again denied by the Supreme Court of the United States. 484 U.S. 873, 108 S.Ct. 208, 98 L.Ed.2d 159 (1987).

Hill then filed a federal *habeas corpus* petition asserting the following grounds:

(1) Hill's video statement given to the state police was not voluntary;

(2) the jury was permitted to ignore evidence of mitigation;

(3) the jury was permitted to consider an impermissibly vague, aggravating factor alleging prior acts of violence;

(4) the prosecuting attorney's demonstration of how Hill had reloaded the shotgun after killing Klein constituted prosecutorial misconduct;

(5) while the appeal was pending, Cox had submitted a written statement alleging that he, not Hill, had killed Klein; and

(6) counsel was ineffective.

After a full evidentiary hearing, I denied the first *habeas* petition in a lengthy opinion. *Hill v. Lockhart,* 719 F.Supp. 1469 (E.D.Ark.1989). The Court of Appeals affirmed. *Hill v. Lockhart,* 927 F.2d 340 (8th Cir.1991), and the Supreme Court denied certiorari, —— U.S. ——, 112 S.Ct. 344, 116 L.Ed.2d 283 (1991). The State sought revocation of the stay of execution which I had placed in effect pending appellate review. The stay has been dissolved, and the Governor of the State of Arkansas has now set an execution date of May 7, 1992.

The petitioner Hill has filed a second successive *habeas corpus* petition and has contemporaneously filed an application for a stay of his execution. A second or successive writ is governed by Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts. This rule reads as follows:

> (b) Successive petitions. A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

Each of the petitioner's contentions, *infra,* are embraced within its ambit. For the most part he fails to allege new or different grounds for relief. He simply restates the same grounds by altered terminology. The new grounds could have been asserted in the prior petition and thus constitute an abuse of the writ.

In his second habeas petition, Mr. Hill asserts four grounds for relief:

(1) violation of due process when the District Court erred in applying the presumption of correctness to the state court findings regarding the presentation of mitigating (youthfulness) circumstances at petitioner's trial;

(2) denial of right to effective assistance of counsel when his trial attorneys allowed him to plead guilty to the two violent felonies charged after his escape from prison which were then used as aggravating circumstances during the penalty phase of the trial;

(3) denial of due process when the Arkansas Supreme Court failed to search the record for errors under state procedure, and failed to conduct adequate comparative review; and

(4) denial of due process and equal protection when the Arkansas Supreme Court denied petitioner permission to proceed with his writ of error coram nobis regarding the newly discovered evidence.

## II. THE YOUTH ISSUE

■ Petitioner's youth was an important feature of his defense during the jury trial and in the state appellate proceedings. It was argued thoroughly at the time of the first habeas hearing and on appeal to the Court of Appeals. Petitioner claims that the jury's finding that "there was no evidence of any mitigating circumstances" was ambiguous and that the reviewing federal courts applied an incorrect presumption of correctness to the jury's finding. I find this argument to be without merit, as noted in my opinion denying the first habeas petition:

> I am in agreement with the Supreme Court of Arkansas with reference to this issue. The trial court properly instructed the jury that form (2) of the verdict forms listed some mitigating factors it could consider. (Trial Tr. 95, 1720). The youth of the defendant was specifically included on this form. (Trial Tr. 84, 1765). *See* A.C.A. § 5–4–605(4) (1987). The jury was told it could find other mitigating circumstances, and space was provided for their listing. (Trial Tr. 1720, 84–86, 1764–65). In closing for the defense in the penalty phase, the youth of the defendant was repeatedly stressed. (Trial Tr. 1742, 1743, 1744, 1745, 1747).
>
> Nothing in the record suggests that the jury disregarded petitioner's youth or failed to give it consideration. It was repeatedly placed before the jury in the verdict forms and closing argument. The jury simply rejected his youth as a mitigating factor, which was clearly within its province.

*Hill v. Lockhart,* 719 F.Supp. 1469, 1473 (E.D.Ark.1989).

The Court of Appeals made similar comments:

> Hill first argues that his sentence should be set aside because the jury found no mitigating factors despite the fact that Hill was only eighteen at the time of the murder and the youth of the defendant is set out by statute as a mitigating factor to be considered in impos-

ing the death sentence. Ark. Code Ann. § 5–4–605(4) (1987).

The jury verdict form concerning mitigating circumstances gave the jury four choices.... The jury selected the fourth option, indicating that they found no evidence of any mitigating circumstance. In rejecting Hill's argument that the jury's selection demonstrates that it improperly ignored the evidence of youth placed before it, the Arkansas Supreme Court stated:

> We do not interpret the jury's action to mean that they did not consider the evidence of mitigation that was offered. Rather we find the jury determined that the appellant's youth was not a mitigating factor, as they were entitled to do, and so indicated that no mitigating circumstances were found.

*Hill,* 289 Ark. at 396, 713 S.W.2d at 238. We find this interpretation entirely persuasive.

*Hill v. Lockhart,* 927 F.2d 340, 342 (8th Cir.1991).

The first ground raised in Hill's second habeas petition, which was thoroughly argued in the first habeas petition and rejected both by this court and the Court of Appeals, is clearly in violation of Rule 9(b) set out, *supra.*

## III. PREVIOUS CONDUCT AS AGGRAVATING CIRCUMSTANCE

The second ground raised in the present petition is that trial counsel was ineffective for allowing petitioner to plead guilty to two felonies involving force or violence prior to his capital murder trial. Petitioner now also contends that counsel should have challenged the procedure which allowed aggravating circumstances to be proved with unadjudicated conduct. He also attacks this procedure directly. These issues had not been raised previously and are therefore procedurally defaulted and are an abuse of the writ of *habeas corpus.* *See* Rule 9(b), *supra.*

There have been three recent definitive opinions of the U.S. Court of Appeals for the Eighth Circuit on the subject of successive habeas petitions.

In *Fairchild v. Lockhart,* 900 F.2d 1292 (8th Cir.1990) the Court of Appeals held that the district judge abused his discretion in entertaining Fairchild's second petition. In his second habeas petition, Fairchild made a due process claim which could have been raised in the Arkansas courts. Fairchild was likewise barred from urging the due process point in his federal habeas petition since he was unable to show "cause" for his procedural default in the state courts and "prejudice" resulting from that default. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). "There are excellent reasons for the rule that claims not properly preserved in the state courts are normally not open on habeas. The trial in state court should be the main judicial event." *Fairchild v. Lockhart, supra* at 1294.

The Court of Appeals also held that "it is, with some exceptions, an abuse of the Great Writ to assert new grounds for relief that were available at the time of an initial petition." *Id., citing Woodard v. Hutchins,* 464 U.S. 377, 380, 104 S.Ct. 752, 753, 78 L.Ed.2d 541 (1984) (per curiam) (Powell, J., concurring joined by a majority of the court) and *Smith v. Armontrout,* 888 F.2d 530, 540 (8th Cir.1989). Fairchild abused the writ because his new claim and the evidence to support it were previously available and because none of the recognized exceptions applied.

*Smith v. Armontrout,* contains a cogent analysis of the limitations on successive habeas petitions. Judge Arnold summarized the governing principles: "An attempt to raise claims omitted from a previous petition should be rejected as an abuse of the writ if (1) the previous omission was the deliberate choice of the petitioner *or* (2) the previous omission is not excusable under the cause-prejudice-innocence approach of *Wainwright* and *Murray v. Carrier,* 477 U.S. 478 [106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) ]." *Smith,* 888 F.2d at 545.

The Court of Appeals affirmed the refusal of the district court to entertain a second habeas petition in *Wilson v. Lockhart,* 892 F.2d 754 (8th Cir.1990), *citing Sanders v. United States,* 373 U.S. 1, 15, 83 S.Ct.

1068, 1077, 10 L.Ed.2d 148 (1963) (controlling weight *may* be given to a prior determination on merits when "ends of justice would not be served" by redetermination) and *Kuhlmann v. Wilson,* 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986) (plurality) (court *required* to entertain successive petition only when petition supplements claim with "colorable showing of factual innocence"). Although *Kuhlmann v. Wilson, supra,* was a plurality opinion in the United States Supreme Court, it has been cited with approval and applied by the Court of Appeals in *Williams v. Armontrout,* 855 F.2d 578 (8th Cir.1988).

> In order to demonstrate that the ends of justice mandate another hearing, the prisoner must make a "colorable showing of factual innocence." *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986) (plurality). Williams does not attempt to meet this burden. Williams has neither shown nor alleged unfairness at any step of his collateral review, and we find that the district court did not abuse its discretion in dismissing the petition.

*Id.* at 580.

■ With regard to the abuse of the writ, the Supreme Court stated in *McCleskey v. Zant,* —— U.S. ——, ——, 111 S.Ct. 1454, 1471, 113 L.Ed.2d 517, 545 (1991):

> The cause and prejudice analysis we have adopted for cases of procedural default applies to an abuse of the writ in the following manner. When a petitioner files a second or subsequent petition, the government bears the burden of pleading abuse of the writ. The Government satisfies this burden if, with clarity and particularity, it notes the petitioner's prior writ history, identifies the claims that appear for the first time and alleges that the petitioner has abused the writ. The burden to disprove abuse then becomes petitioner's. To excuse his failure to raise the claim earlier, he must show cause of his failing to raise it and prejudice therefrom as those concepts have been defined in our procedural default decisions. The petitioner's opportunity

to meet the burden of cause and prejudice will not include an evidentiary hearing if the District Court determines, as a matter of law, that the petitioner cannot satisfy the standard. If the petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.

The burden is now on the petitioner to excuse his failure to raise his present claim in the first petition.

■ If petitioner could clear the above hurdles, he is unable to succeed on the merits. It seems obvious that Hill's two felony pleas were part of a trial strategy to keep the reprehensible facts of his prior crime from being developed at the penalty phase of his trial. As a result of his guilty pleas, only the fact of the convictions could be introduced. In the absence of a plea, the state could present live testimony of those persons victimized by petitioner during the kidnapping and robbery. At the first habeas hearing, there was testimony that petitioner threatened to rape an elderly woman and stuck a gun in the mouth of her elderly companion and threatened to kill him. Prior unadjudicated crimes can be used as aggravating circumstances to support a death sentence in Arkansas. Ark. Code Ann. § 5–4–604(3) (1987); *Miller v. State,* 280 Ark. 551, 660 S.W.2d 163 (1983); *Gardner v. State,* 296 Ark. 41, 754 S.W.2d 518 (1988). Such evidence does not infringe upon a defendant's federal constitutional rights. *Gilmore v. Armontrout,* 861 F.2d 1061, 1073 (8th Cir.1988), *reh. denied en banc,* 867 F.2d 1179 (8th Cir. 1989) (Lay, Heaney, and McMillian, dissenting). While these cases may be interesting from an academic standpoint, they have no relevance to the case at bar because unadjudicated conduct was not presented in petitioner's trial.

## IV. COMPARATIVE REVIEW

■ For the first time Hill argues that the Arkansas Supreme Court failed to conduct comparative review of his death sen-

tence and failed to conduct a review of adverse trial rulings as required by Ark. Sup.Ct.R. 11(f). These contentions could have been made in the state court proceeding and in the initial habeas proceeding. This is both a procedural default and abuse of the writ without any showing of cause and prejudice. However, there is no constitutional right to comparative review or plain error review. *See Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) (no right to comparative review); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (contemporaneous objection rule bars habeas review absent cause and prejudice). Hill makes a due process argument based on the Arkansas Supreme Court's adopted rule of comparative review, *Collins v. State*, 261 Ark. 195, 548 S.W.2d 106 (1977), and its rule regarding review of all adverse trial rulings abstracted by the appellant. Ark.Sup.Ct.R. 11(f). Hill has adduced no evidence that the Supreme Court of Arkansas did not conduct adequate review in this case. The court has recently given the assurance that "We have taken the review of death cases as a most serious matter, giving these cases extra attention and consideration, being certain that a defendant has received a fair trial." *Ruiz v. State*, 280 Ark. 190, 194, 655 S.W.2d 441, 443 (1983). *Ruiz* contains an extensive review of death penalty cases in Arkansas since *Collins v. State, supra*. It demonstrates that in a substantial percentage of these appeals the defendants have secured reversals or reduction of the death penalty.

With regard to Rule 11(f), it is clear that the rule does not absolve the appellant of the obligation to object at trial as a prerequisite to appellate review. *Withers v. State*, 308 Ark. 507, 511, 825 S.W.2d 819 (1992). The court reviews "all objections brought to [its] attention in the abstract and briefs in appeals from a sentence of life imprisonment or death." *Jackson v. State*, 306 Ark. 70, 74, 811 S.W.2d 299 (1991). Hill specifies no error which the Arkansas Supreme Court overlooked pursuant to Rule 11(f). As a matter of fact, that court said on the direct appeal: "As required by our rule 11(f) we have reviewed all abstracted rulings adverse to appellant as well as the points raised on appeal." *Hill v. State*, 289 Ark. 387, 389, 713 S.W.2d 233, 234 (1986).

## V. THE WRIT OF ERROR CORAM NOBIS

■ Petitioner claims a due process violation in the failure of the Supreme Court of Arkansas to give him permission to seek a writ of error *coram nobis* in the circuit court based upon newly discovered evidence, namely, the statement of Michael Cox, exculpating Hill as the "trigger" man. Cox initially denied shooting the officer but changed his story while the case was on appeal. The petition for error *coram nobis* was denied by the Supreme Court of Arkansas on December 9, 1985. The issue was raised again on direct appeal without success. *Hill v. State*, 289 Ark. 387, 398–99, 713 S.W.2d 233, 239 (1986). It was also addressed in the Rule 37 petition. *Hill v. State*, 292 Ark. 144, 147, 728 S.W.2d 510, 512 (1987).

Petitioner also argued this issue in the prior *habeas* on due process grounds. Cox testified at the habeas hearing in substantial conformity with his affidavit filed with the *coram nobis* petition. I made the following findings with respect to his affidavit and testimony:

On the *habeas* petition I held an evidentiary hearing in which the matter of Cox's "confession" was fully explored. I heard the testimony of Cox with regard to this "confession." Based on his demeanor, the inconsistencies developed on cross-examination, the video statements of both Cox and Hill, the video presentation of the crime scene, and the trial transcript, I am of the firm opinion and I find as a fact that Cox filed a false statement and that he committed perjury in the *habeas* hearing by testifying that he and not Hill fired the fatal shot at Klein. I find that Hill was the trigger man and that Cox's testimony to the contrary is frivolous and incredible.

*Hill v. Lockhart*, 719 F.Supp. 1469, 1477 (E.D.Ark.1989).

The Court of Appeals entertained a similar view with respect to the alleged "confession" of Cox:

A searching review of the entire record convinces us that the District Court's finding in this regard is not clearly erroneous.

This Court has stated that we view a recantation by a convicted codefendant with great skepticism and believe it should be supported by additional, independent evidence whenever possible. *Hall [v. Lockhart]*, 806 F.2d [165] at 168 [(8th Cir.1986)]. Cox stated to the police following his arrest and to the state court in a preliminary hearing held concerning the voluntariness of his confession that he did not shoot Klein and, in fact, did not even see the shooting. Hill readily admitted to the police after his arrest that he shot officer Klein. We agree with the District Court that Cox's subsequent recantation and testimony at the habeas hearing was incredible and, if introduced at a new trial along with the statements of Cox and Hill after their arrest, the physical evidence at the crime scene, and the testimony of other witnesses, would not be likely to produce an acquittal or a sentence of life imprisonment. Accordingly, Hill is not entitled to any further evidentiary hearing based on this asserted new evidence.

*Hill v. Lockhart*, 927 F.2d 340, 346 (8th Cir.1991). Without question the Cox "confession" has been explored in great depth in a full evidentiary hearing in the U.S. District Court and also by the Court of Appeals. To relitigate this issue would be an egregious violation of Rule 9(b), *supra*.

## VI. CRUEL AND UNUSUAL PUNISHMENT

On April 29, 1992, petitioner filed an amendment to his writ of *habeas corpus* in which he contends that death by lethal injection as carried out in Arkansas constitutes cruel and unusual punishment. The Petition states, "The previous execution of Ricky Ray Rector, Ronald Gene Simmons, and John Swindler were performed by persons who were not medical doctors." [1] He claims that this practice violates A.C.A. § 5–4–617 which provides that "a defendant's death must be pronounced according to accepted standards of medical practice." I interpret this statute simply to mean that the death of a person who has been executed must be pronounced according to accepted standards of medical practice. An execution ends with the pronouncement of death by someone qualified to determine the absence of vital signs. The statute does not require such determination to be made by a doctor. Other medical personnel can make such determination "according to accepted medical standards." The absence of a physician at an execution is hardly a deprivation of a federal constitutional right. It should be pointed out that no proof has been adduced that a physician was not present at the other executions mentioned by petitioner or that a physician will not be present at petitioner's execution. Petitioner seeks to implicate the federal constitutional right that to be free from cruel and unusual punishment on the basis that it is sometimes difficult to locate a vein suitable for an intravenous injection. Petitioner attempts to attribute such difficulty to the absence of a physician. However, it must be noted that even in a hospital setting intravenous injections are generally given by a nurse or other medical personnel. On the rare occasion when there is difficulty in locating a vein, more than a single needle insertion may be necessary. This is hardly the cruel and unusual punishment contemplated by the Eighth Amendment.

There is general agreement that lethal injection is at present the most humane type of execution available and is far preferable to the sometimes barbaric means employed in the past. Many states have now abandoned other forms of execution in favor of lethal injection.

## VII. CONCLUSION

The Court, having fully examined the transcript and proceedings in state court and having held a full evidentiary hearing

---

1. Swindler was electrocuted and not executed by lethal injection.

in connection with the initial *habeas corpus* petition, finds that under Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Court, no further evidentiary hearing is necessary in this case. All issues can be determined on the basis of the pleadings and briefs.

The petitioner was afforded a jury trial in the Circuit Court of Pulaski County by an able and experienced judge with wide experience in criminal law. The case has been twice reviewed by the Supreme Court of Arkansas and twice reviewed by the Supreme Court of the United States. The Court of Appeals for the Eighth Circuit has reviewed the case once and will doubtlessly have another opportunity before petitioner is executed, as will the Supreme Court of the United States for the third time. This is the second occasion for this Court to review Hill's conviction and death sentence. The review in the federal courts is a rather limited one, being confined to an examination of whether any of petitioner's federal constitutional rights have been impaired in the course of the legal proceedings resulting from the murder of State Trooper Klein. As pointed out, *supra*, the review pursuant to a second *habeas corpus* petition is even more limited.

I have concluded that there is no basis under the binding decisions of the Court of Appeals for the Eighth Circuit and the Supreme Court of the United States, and the evidence heretofore developed in this case, for me to grant the petition and amended petition filed by Stephen Douglas Hill. It follows that there is no basis for granting a stay of his execution.